OPINION
Appellants, Northwestern Ohio Building and Construction Trades Council and International Brotherhood of Electrical Workers, Local Union #8, appeal from a decision and entry of the Franklin County Court of Common Pleas granting the summary judgment motion of appellees, James Conrad, Administrator of the Ohio Bureau of Workers' Compensation ("the administrator"), and the Ohio Bureau of Workers' Compensation ("BWC"). In the decision and entry, the trial court also overruled appellants' summary judgment motion, overruled appellees' motion to dismiss, and granted appellees' motion for attorney fees and costs in connection with the transfer of venue.
Appellants filed a complaint in the Lucas County Court of Common Pleas on June 30, 1997, seeking a declaratory judgment that R.C. 4121.44, 4121.44.1, 4121.44.2 and 4121.44.3, and Ohio Adm. Code Chapter 4123-6 are unconstitutional in that they violate Section 35, Article II of the Ohio Constitution, and also seeking injunctive relief. Appellees filed an answer and a motion to dismiss or, alternatively, to transfer venue. On August 20, 1997, the Lucas County Court of Common Pleas granted appellees' motion in the alternative and transferred the action to the Franklin County Court of Common Pleas.
Upon transfer to the Franklin County Court of Common Pleas, appellees filed a motion for attorney fees and costs under Civ.R. 3(C)(2). The parties filed a joint stipulation of facts on October 31, 1997. Appellee filed a motion to dismiss for lack of subject matter jurisdiction and a summary judgment motion. Appellant filed memoranda contra to appellees' motions, as well as their own summary judgment motion. Appellees filed a memorandum contra to appellants' summary judgment motion.
On September 8, 1998, the trial court issued a decision and entry resolving all pending motions. The trial court granted appellees' motion for attorney fees and costs, finding that the law is clear that actions against state agencies and their administrators are to be brought in Franklin County and awarding appellees $1,876.25. The trial court overruled appellees' motion to dismiss, concluding that appellants had the requisite standing to bring the lawsuit. Concluding that the provisions of the Ohio Revised Code and the Ohio Administrative Code do not violate Section 35, Article II of the Ohio Constitution, the trial court granted appellees' summary judgment motion, denied appellants' request for an injunction, and overruled appellants' summary judgment motion. Appellants filed a timely notice of appeal.
On appeal, appellants assert three assignments of error:
First Assignment of Error:
 The trial court erred in overruling Appellants' motion for summary judgment and in granting Appellees' motion for summary judgment, in that the statutes and rules pertaining to the Health Partnership Program permit private actors to administer medical benefits provided by the state insurance fund, to establish terms and conditions of payment of medical benefits from the state insurance fund, and to determine the rights of claimants to medical benefits from such fund, in direct violation of Article II, section 35 of the Ohio Constitution.
Second Assignment of Error:
 The trial court erred in overruling Appellants' motion for summary judgment and in granting Appellees' motion for summary judgment, in that Article II, section 35 of the Ohio Constitution and section 4123.30 of the Revised Code prohibit the use of premium contributions paid by employers to the state insurance fund for the payment of fees to private managed care organizations for medical management and cost containment services provided to the Bureau of Workers' Compensation.
Third Assignment of Error:
 The trial court erred in granting Appellees' motion for costs and attorney fees in connection with the transfer of venue to Franklin County.
The parties filed a joint stipulation of facts. Appellants are unincorporated associations duly organized under Ohio law. Appellants are employers as defined in R.C. 4123.01(B) for the purposes of the Workers' Compensation Act and are required to contribute premiums to the State Insurance Fund ("SIF"). Appellants are also statutory beneficiaries of the trust fund as provided in R.C. 4123.30. The BWC is a public entity created by the Ohio General Assembly as provided in R.C. 4121.12.1(A), whose principal place of business is at 30 West Spring Street, Columbus, Ohio, and the BWC maintains an office in Toledo, Lucas County, Ohio. The administrator was appointed, as provided in R.C. 4121.12.1(A), and is charged with administrative control of the BWC and is responsible for discharging all duties imposed upon him by the Ohio Revised Code.
The Ohio General Assembly enacted certain amendments to R.C. Chapter 4121, effective October 20, 1993, including revised R.C. 4121.44 and new R.C. 4121.44.1 through 4121.44.3, creating the Health Partnership Program ("HPP") for the management, administration and delivery of medical services to employees injured in the course of their employment. BWC, with the advice and consent of the Workers' Compensation Oversight Commission, has promulgated rules for the HPP which are published in Ohio Adm. Code Chapter 4123-6. These rules contemplate that the medical management and cost containment services authorized to be contracted for, under R.C. 4121.44, will be provided by Managed Care Organizations ("MCOs") certified by BWC pursuant to an application and certification process provided in Ohio Adm. Code Chapter 4123-6. Under these rules, each employer contributing to the SIF is required to select an MCO from the BWC's list of certified MCOs and, if an employer does not select an MCO, then the BWC will select an MCO for that employer. The rules also provide that MCOs shall be paid a fee by BWC for medical management and administrative services, and that MCOs may be paid performance incentive payments in addition to their fees for medical management and administrative services. Both the fee and incentive payments will be paid out of employer premium contributions, with the total remuneration available to each MCO being a fixed percentage of the premiums paid by the employers utilizing the particular MCO. The total percentage of premium allocated for the payment of fees and performance incentive payments is not fixed by rule, but is established by the BWC or administrator subject to periodic adjustment. At the time of the filing of the stipulation, fifty-six MCOs were certified by the BWC.
An appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. An appellate court applies the same standard as the trial court in reviewing a trial court's disposition of a summary judgment motion. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107. Before summary judgment can be granted under Civ.R. 56(C), the trial court must determine that:
 * * * (1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. * * *
State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511
(citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the non-moving party. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 358-359.
In appellants' first assignment of error, they argue in essence that the trial court erred by overruling their motion for summary judgment and by granting appellees' motion for summary judgment in that the statutes and rules pertaining to the HPP amount to an improper delegation of authority to MCOs in violation of Section 35, Article II of the Ohio Constitution. We are compelled to disagree.
The Supreme Court of Ohio rejected identical arguments in State ex rel. Haylett v. Ohio Bur. of Workers' Comp. (1999),87 Ohio St.3d 325. In Haylett, the court held that the MCO program does not constitute an improper delegation of authority to a private entity in violation of Section 35, Article II of the Ohio Constitution. Id. at 330. Consequently, based upon the authority of Haylett, appellants' first assignment of error is overruled.
In appellants' second assignment of error, they argue that the trial court erred by granting appellees' summary judgment motion and by overruling their summary judgment motion in that Section 35, Article II of the Ohio Constitution and R.C. 4123.30
prohibit the use of premium contributions from the SIF for the payment of fees to MCOs for medical management and cost containment services. We agree.
The trial court, relying on Thompson v. Indus. Comm.
(1982), 1 Ohio St.3d 244, indicated that Section 35, Article II of the Ohio Constitution was not violated as long as SIF funds were used for purposes related to or incidental to workers' compensation. Because it found that the payment of SIF funds to MCOs for medical management and cost containment were related to or incidental to workers' compensation, the trial court held that the payments do not violate the Ohio Constitution. Thus, the trial court concluded that there was no genuine issue of material fact and that appellees were entitled to judgment as a matter of law.
Appellants assert that the Supreme Court of Ohio held inCorrugated Container Co. v. Dickerson (1960), 171 Ohio St. 289, that payments from the SIF could not be used to cover administrative costs and that any such payment would violate Section 35, Article II of the Ohio Constitution. Additionally, appellants argue that there is no statutory authority for these payments and that they are in contravention of R.C. 4123.30. However, appellees assert that the use of SIF funds for medical management and cost containment services by MCOs is consistent with the Ohio Supreme Court's decision in Thompson, which indicated that Section 35, Article II of the Ohio Constitution is not to be interpreted narrowly. Moreover, appellees argue that the payments are consistent with R.C. 4123.30 and 4121.44.1.
Section 35, Article II of the Ohio Constitution creates a workers' compensation system "[f]or the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment[.]" The Ohio Supreme Court considered the limit of the use of SIF money under Section 35, Article II of the Ohio Constitution in Corrugated. In Corrugated, an employer-contributor to the SIF brought a declaratory judgment action seeking a determination of whether the legislature has the power to direct payments of SIF money into the general revenue fund to reimburse the state for all amounts appropriated for the administrative costs of the Industrial Commission. Id. at 289. Previously, two-thirds of the administrative costs of the Industrial Commission were paid by an assessment on employers under R.C. 4123.34.1 and 4123.34.2. Id. The Ohio Supreme Court held that no part of the SIF could be used to reimburse the general revenue fund for the administrative costs of the Industrial Commission except as provided in R.C. 4123.34.2, and that the Industrial Commission was without authority to approve such a transfer of funds. Id. at 291. The court indicated that the attempted transfer of SIF funds was "violative of the express limitation placed upon the State Insurance Fund by Section 35, Article II of the Constitution." Id. Thus, under Corrugated, funds from the SIF can only be spent for the purposes enumerated in Section 35, Article II of the Ohio Constitution.
Both appellees and the trial court rely on Thompson, as controlling case law rather than Corrugated; however, in Thompson,
the Ohio Supreme Court reaffirmed the holding of Corrugated. Id. at 247. The plaintiff in Thompson challenged the transfer of investment income from the SIF to the Disabled Workers' Relief Fund ("DWRF"), which provides supplemental income to permanently and totally disabled workers' compensation recipients. Id. The court upheld the constitutionality of the transfer of investment income from the SIF to DWRF because the use of SIF funds for DWRF "constitutes a purpose permitted by Section 35, Article II." Id. at 249. The Ohio Supreme Court noted that Section 35, Article II
of the Ohio Constitution is not to be interpreted narrowly. Id. at 248, citing State ex rel. Michaels v. Morse (1956), 165 Ohio St. 599,603. However, the court explained that "[t]he General Assembly is afforded substantial discretion to implement a comprehensive workers' compensation program and it is not the function of the judiciary to question the wisdom of the General Assembly's exercise of its permissive powers under Section 35, Article II, so long as these powers are used in furtherance of theconstitutionally enumerated purpose." [Emphasis added.] Id. at 249. The trial court incorrectly attributes the language that "the SIF must be used for purposes which relate to, or are incidental to, workers' compensation" to the Supreme Court when, in fact, the court was merely restating the argument of the appellant in Thompson. Id. at 246. Thus, the Supreme Court reaffirmed the holding of Corrugated that funds from the SIF can only be spent for the purposes enumerated in Section 35, ArticleII of the Ohio Constitution.
Under R.C. 4123.30, money from the SIF can be utilized for "the payment of compensation, medical services, examinations, recommendations and determinations, nursing and hospital services, medicine, rehabilitation, death benefits, funeral expenses, and like benefits for loss sustained on account of injury, disease, or death provided for by this chapter, and for no other purpose." (Emphasis added.) When this language is read in conjunction with the express limitation of Section 35, Article II of the Ohio Constitution, it is apparent that the use of SIF money is limited to compensating injured workers and their dependents for injuries and illness arising out of their employment. Currently, the administrative costs of the BWC are paid by a separate assessment for employers as provided in R.C. 4123.34.1 and 4123.34.2.
When the General Assembly created the HPP, it authorized the administrator of the BWC, with the advice and consent of the workers' compensation oversight commission, to promulgate rules for the HPP, including a rule to provide "[a]ppropriate financial incentives to reduce service cost and insure proper system utilization without sacrificing the quality of service[.]" R.C. 4121.44.1(A)(4). In response, the administrator promulgated Ohio Adm. Code 4123-6-13(B), which authorizes the payment of administrative fees, performance payments and incentive payments to MCOs. According to Douglas J. Maser, the Chief Medical Management and Cost Containment Officer for the BWC, MCOs are paid a set percentage of the employers' SIF premiums for administrative costs, rather than as an additional assessment. Performance incentives are paid as an additional percentage of the employers' SIF premiums; however, neither R.C. 4121.44.1(A)(4) nor Ohio Adm. Code 4123-6-13 specifically authorize these payments from SIF. In other instances where the General Assembly has authorized payments from SIF, it has specifically provided for the payments in the statute. For example, R.C. 4123.47(A) specifically states that the expense of audits "shall be paid from the state insurance fund."
We find that the payment of SIF funds to MCOs in the form of administrative fees and performance incentives violates Section 35, Article II of the Ohio Constitution. As the Supreme Court held in Corrugated and reaffirmed in Thompson, funds from SIF can only be spent for the purposes enumerated in Section 35, Article II of the Ohio Constitution which, as noted above, is limited to compensating injured workers and their dependents for injuries and illness arising out of their employment. This constitutional requirement is reflected in the statutory scheme under which R.C. 4123.30 also limits the use of SIF funds to the constitutional purpose enumerated in Section 35, Article II of the Ohio Constitution and under which the administrative costs of the BWC are paid through a separate assessment on employers as provided in R.C. 4123.34.1 and 4123.34.2. Moreover, R.C. 4121.44.1(A)(4) is ambiguous in that it does not specifically authorize that these payments be made from SIF. Lacking any clear legislative authorization, appellees were without the authority to authorize these payments from SIF.
Consequently, we conclude that the trial court did err in overruling appellants' summary judgment motion and in granting appellees' summary judgment motion on this issue. We find that there is no genuine issue of material fact, that appellants are entitled to judgment as a matter of law, and that it appears from the evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of appellees, that conclusion is adverse to appellees. Therefore, appellants' second assignment of error is sustained.
In appellants' third assignment of error, they argue that the trial court erred by awarding appellees attorney fees and costs related to the transfer of venue from Lucas County to Franklin County. We disagree.
Under Civ.R. 3(C)(2), a trial court may award reasonable costs and attorney fees upon a transfer of venue against the party who commenced the action in an improper forum. An appellate court will not reverse a trial court's award of attorney fees under Civ.R. 3(C)(2) absent an abuse of discretion. Daines v. Wilkins
(May 4, 1993), Franklin App. No. 92AP-1696, unreported; OhioStudent Loan Comm. v. Rodner (1991), 68 Ohio App.3d 397, 400. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218.
The trial court found that attorney fees were appropriate because it is well-established that actions against state agencies and their administrators are to be commenced in Franklin County. Appellants argue that the award of attorney fees was erroneous in that appellants reasonably believed that venue was proper in Lucas County because appellees maintain an office in Lucas County. Appellees argue that, because the law is clear that the action should have been filed in Franklin County, appellants' decision to file the case in Lucas County amounted to improper forum shopping.
We agree with the trial court and appellees that Ohio law is clear that actions of this nature must be commenced in Franklin County where the BWC and its administrator maintain their principal place of business. State ex rel. Hawley v. Indus. Comm.
(1940), 137 Ohio St. 332, 336-337; State ex rel. Cook v. Zimpher
(1983), 11 Ohio App.3d 187, 188. Thus, the commencement of the action in Lucas County was improper. Appellees were forced to incur attorney fees and costs to obtain the transfer of venue from Lucas County to Franklin County, and appellees provided the trial court with an affidavit and exhibits supporting the amount of fees incurred. Appellants make no argument that the amount of fees and costs awarded was not reasonable. Consequently, we find that the trial court did not abuse its discretion in awarding appellees attorney fees and costs in the amount of $1,876.25. Appellants' third assignment of error is overruled.
For the foregoing reasons, appellants' first and third assignments of error are overruled, while appellants' second assignment of error is sustained. The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
BROWN, J., and BOWMAN, P.J., concur.